IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LAYALI ZUHDI AL-MANSOUR | : <br> : <br> : <br> : |
| v. | : <br> :     Civil Action No. CCB-11-2939 <br> : |
| MUHAMMAD ALI SHRAIM, *et al.* | : <br> : <br> : |

...o0o...

**MEMORANDUM**

      Plaintiff Layali Zuhdi Al-Mansour brought this action against her husband Muhammad Ali Shraim and his brother Ihab Ali Shraim, requesting a declaratory judgment from this court that a sponsored immigrant's monthly federal support payments pursuant to 8 U.S.C. § 1183a are not subject to state levy, execution, garnishment or any set off—including for child support.  She also requests a declaratory judgment that the transfer of real property between the two defendants was a fraudulent conveyance under the Maryland Fraudulent Conveyance Act, Md. Code Ann., Com. Law §§ 15-201 to -214.

      The defendants have moved to dismiss for lack of subject matter jurisdiction, and Ms. Al-Mansour has moved for summary judgment, for Rule 11 sanctions, and to request that this court enjoin ongoing child support proceedings in Maryland state court.  The issues have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons stated below, all motions will be denied.  The complaint will, however, be dismissed under the abstention doctrine of *Younger v. Harris,* 401 U.S. 37 (1971).

1

I. **BACKGROUND**

Ms. Al-Mansour, a citizen of Jordan, married Mr. Shraim, a United States citizen, in 2007. To enable Ms. Al-Mansour to obtain her green card, Mr. Shraim signed a Form I–864 Affidavit, agreeing to support her at an income of at least 125 percent of the federal poverty guideline. Through a sequence of events outlined in two prior opinions of this court,[1] Ms. Al-Mansour and Mr. Shraim are now separated and Mr. Shraim was awarded custody of their child.

On June 28, 2010, Ms. Al-Mansour filed suit in this court to enforce the Form I–864 Affidavit, and this court entered judgment in her favor in the amount of $16,940.61. *See Al-Mansour v. Shraim*, No. 10-1729, 2011 WL 1457102 (D. Md. Apr. 14, 2011). Following the judgment, the parties entered into a settlement agreement wherein the parties agreed Mr. Shraim would pay Ms. Al-Mansour a total of $22,000, inclusive of attorney's fees. (Compl. ¶ 4, ECF No. 1.) The settlement amount would be satisfied in twelve consecutive payments of $1,134 each, beginning on June 1, 2011 and ending on May 1, 2012. (*Id*.)

On June 3, 2011, Mr. Shraim filed suit in Montgomery County Circuit Court for child support, child support arrears, attorneys' fees and other relief. (*Id.* at ¶ 5.) In his child support suit, he alleges Ms. Al-Mansour "voluntarily impoverished" herself in order to win her action in federal court, and that as a result of the federal judgment she now has funds from which to contribute. (*Id.* at ¶ 6.) On June 30, 2011, the defendant filed another motion in state court, requesting attorney's fees stemming from Ms. Al-Mansour's unsuccessful appeal of the custody arrangement of their child. (*Id*. at ¶ 7.) In that motion, Mr. Shraim requested a fee amount "roughly equal[]" to the federal judgment. (*Id*.)

---

[1] See *Al-Mansour v. Shraim*, No. 10-1729, 2011 WL 345876 (D. Md. Feb. 2, 2011); *Al-Mansour v. Shraim*, No. 10-1729, 2011 WL 1457102 (D. Md. Apr. 14, 2011). Knowledge of these facts is assumed.

On October 14, 2011, Ms. Al-Mansour filed the instant complaint in federal court. She argues that Mr. Shraim's state court actions are a collateral attack and an effort to circumvent this court's April 14, 2011, ruling. Ms. Al-Mansour's complaint requests from this court a declaratory judgment that she is not obligated to pay child support to Mr. Shraim out of her federal support payments, and that any state court judgment to the contrary violates 8 U.S.C. § 1183a and "is thus void" under the Supremacy Clause of the United States Constitution and the doctrine of federal preemption. She also requests that this court declare the transfer of Mr. Shraim's house to his brother to be a "fraudulent conveyance" under the Maryland Fraudulent Conveyance Act, Md. Code Ann., Com. Law §§ 15-201 to -214.

In response, the defendants have filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the suit lacks a federal question to support federal question jurisdiction. Ms. Al-Mansour filed a motion for summary judgment, and subsequently filed motions to enjoin the state court child support proceedings and for sanctions under Fed. R. Civ. P. 11.

## II. ANALYSIS

Defendants argue that this court lacks subject matter jurisdiction and the suit should therefore be dismissed, presumably pursuant to Fed. R. Civ. P. 12(b)(1). In reviewing a Fed. R. Civ. P. 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court should grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*,

166 F.3d 642, 647 (4th Cir. 1999).  Ms. Al-Mansour contends the face of her complaint reveals causes of action arising under federal law and affording this court ancillary jurisdiction.  The court disagrees.

Ms. Al-Mansour brings her action for declaratory judgment pursuant to the Federal Declaratory Judgment Act ("FDJA"), under which a federal court "may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).  The FDJA does not itself confer subject matter jurisdiction.  Rather, a federal district court must have independent subject matter jurisdiction over the action, either diversity of citizenship or federal question.  *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 323–24 (4th Cir. 1937).

Ms. Al-Mansour argues that her requests for a declaratory judgment turn on the interpretation of a federal statute, 8 U.S.C. § 1183a, and therefore provide federal question jurisdiction under 28 U.S.C. § 1331.  This court agrees, but not because *Ms. Al-Mansour's* claim turns on the interpretation of a federal statute. As the Fourth Circuit has explained,

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.

*McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243, 250 (4th Cir. 1972) (citing *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242–243 (1952)).  Here, the federal question of the proper interpretation of 8 U.S.C. § 1183a apparently has been raised by Mr. Shraim in the state court action.  (*See* Def.'s Mot. to Establish Child Support, ECF No. 6-1.)  Therefore, as best can be determined on this record, federal question subject matter jurisdiction exists.[2]

---

[2] Mr. Shraim argues that "child support is strictly an issue to be dealt with by the state courts." (ECF No. 5, at 1.)  It is true that "[f]amily relations [is] a traditional area of state concern." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005) (quoting *Moore v. Sims*, 442 U.S. 415, 435 (1979)).  However, there is no general

4

Turning to the plaintiff's claim of fraudulent conveyance, where under state law the transferee in a purported fraudulent conveyance is considered a necessary or indispensable party to the conveyance, a federal district court may have ancillary jurisdiction over that party in a post-judgment fraudulent conveyance action. *See Thomas, Head & Greisen Emps. Trust v. Buster*, 95 F.3d 1449, 1454–55 (9th Cir. 1996) (citing *Dewey v. W. Fairmont Gas Coal Co.*, 123 U.S. 329, 333 (1887)). Under Maryland law, courts do not regard "an innocent party who is the ultimate recipient of the subject of the fraudulent conveyance as a necessary party if no effort is made to satisfy the creditor's claim from that which the innocent recipient holds." *Damazo v. Wahby*, 305 A.2d 138, 141 (Md. 1973). Though Ms. Al-Mansour has not yet had any reason to satisfy her claim by attaching a lien to the real property at issue, the court assumes for the purpose of this analysis that this lawsuit represents an effort by Ms. Al-Mansour to satisfy her judgment through attachment. Thus, Ihab Ali Shraim is a necessary party and this court has ancillary jurisdiction over the fraudulent conveyance claim.

Though agreeing that subject matter jurisdiction exists, the court nonetheless finds the exercise of this jurisdiction over these claims would not be appropriate at this time under the *Younger* abstention doctrine. 401 U.S. 37. The Supreme Court has fashioned a three-part test for determining when *Younger* abstention applies. Abstention is appropriate where 1) there are ongoing state judicial proceedings; 2) the proceedings implicate important state interests; and 3) there is an adequate opportunity to raise federal claims in the state proceedings. *Harper*, 396 F.3d at 352; *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (1994) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Here, all three prongs of the *Younger* test are met.

---

"domestic-relations exception" to federal question jurisdiction, as there is to diversity jurisdiction. *U.S. v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997).

The determination of child support in Montgomery County Circuit Court is an ongoing coercive state judicial proceeding in which the Circuit Court will be required to consider the same federal statutory arguments and state law claims Ms. Al-Mansour raises in this court. Divorce and child support proceedings "implicate important state interests" for the purpose of considering *Younger* abstention. *See Anthony v. Council*, 316 F.3d 412, 421–22 (3d Cir. 2003) (finding New Jersey has an "overriding interest in in ordering, monitoring, enforcing and modifying child support obligations"); *Hickey v. Duffy*, 827 F.2d 234, 244–45 (7th Cir. 1987) (Flaum, J., concurring) (urging abstention under *Younger* where plaintiff asked federal court to intervene in state court divorce proceedings to determine how to consider federal AFDC benefits). And, finally, there is no indication that a Maryland state court determining child support obligations would not appropriately consider federal statutory or constitutional limits on a child support determination. *See, e.g., Shrivastava v. Mates*, 612 A.2d 313, 331 (Md. App. 1992) (considering whether child support guidelines would violate the Contract Clause of the United States Constitution).

This court also must consider whether one of the exceptions to the doctrine applies here. Namely, *Younger* abstention does allow intervention in those cases "where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1136 (4th Cir. 1995) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975)). "Bad faith in this context 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Suggs v. Brannon*, 804 F.2d 274, 278 (4th Cir. 1986) (quoting *Kugler v. Helfont*, 421 U.S. 117, 126 n.6 (1975)); *Williams v. North*, 638 F. Supp. 457, 462–63 (D. Md. 1986).

6

To put it bluntly, the court is skeptical of Mr. Shraim's motives, given the previous determination that Mr. Shraim had failed to prove Ms. Al-Mansour earned *any* income during 2010, *Al-Mansour*, 2011 WL 1457102 at *3, and Mr. Shraim's admission that his own income is "well above 125% of the poverty line." (Def.'s Mot. to Dismiss 3, ECF No. 5.)  Nonetheless, Ms. Al-Mansour has suggested that the federal question at issue here may be one of "first impression," thus it is not unreasonable that Mr. Shraim might assume that he has a "reasonable expectation" of success in pursuing his claim.  *Suggs*, 804 F.2d at 278.  "Nor is there any reason for this court to believe that the state court is not competent to adjudicate and protect plaintiff's right to bring [her] federal actions."  *Williams*, 638 F. Supp. at 462 (considering the availability of a competent state forum as a mitigating factor in determination of bad faith or harassment exception).

In weighing the application of *Younger*, the court heeds the "basic proposition that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Emp'rs Res. Mgmt. Co.*, 65 F.3d at 1134 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). Even where *Younger* abstention is at issue, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (citation omitted).  Nonetheless, in considering the above factors, and giving particular weight to the competence of the state tribunal to appropriately consider federal statutory and constitutional questions in determining matters of paramount state interest, the court finds abstention to be proper with regard to Ms. Al-Mansour's request for a declaratory judgment.[3]

Even if *Younger* abstention were not appropriate, under the FDJA "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions."

---

[3] Because the court abstains from exercising jurisdiction over Ms. Al-Mansour's claims for a declaratory judgment, neither will the court entertain her motion to enjoin those state proceedings.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). This latitude stems from the permissive language of the FDJA, which states that a federal court "*may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a) (emphasis added). Thus, "[i]f a district court possesses declaratory judgment jurisdiction, it may nonetheless, in the exercise of its discretion, decline to entertain the action." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004) (internal quotation marks and citations omitted). "This discretion, while not unbounded, is especially crucial when, as here, a parallel or related proceeding is pending in state court." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005).

In considering whether to decline jurisdiction under the FDJA, the court would consider the four *Kapiloff* factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff*, 155 F.3d at 493–94.

For the same reasons articulated above, the state of Maryland has a strong interest in deciding issues regarding child support in its own courts, and these issues are most efficiently resolved in the state court that has already heard motions on the questions. The risk of entanglement is particularly strong because the question of fraudulent conveyance requires consideration of what other assets and income are available to the defendant—questions undoubtedly at the heart of the parties' state court divorce and child support proceedings. And, because there is no indication the state court will not adequately consider these issues, this

federal action could be considered "procedural fencing." Thus, even if the court did not abstain pursuant to *Younger*, it would decline jurisdiction after applying the *Kapiloff* factors.

Finally, the court considers Ms. Al-Mansour's motion for Rule 11 sanctions. Ms. Al-Mansour accuses Mr. Shraim of providing two "diametrically opposed" factual allegations about the transfer of his Jordanian property to Ms. Al-Mansour in this court and in the ongoing state court action. (Pl.'s Mot. for Sanctions 3, ECF No. 10, at 3.) She notes that in the course of the original action before this court, Mr. Shraim presented the transfer of the property to his wife as a "gift[]" to her as a "sole owner." (*Id.* at 2) But, in his subsequent filings in state court, he argues that he "did not intend for [Ms. Al-Mansour] to act as owner" of the property, only for her to attempt to sell it on his behalf. (*Id.* at 3 & Attach. 4, at 3.)

The court shares Ms. Al-Mansour's concerns about Mr. Shraim's truthfulness in his testimony. However, the court is mindful that Rule 11 sanctions are to be imposed sparingly. *See Thomas v. Treasury Mgmt. Ass'n, Inc.*, 158 F.R.D. 364, 366 (D. Md. 1994). As Mr. Shraim contends, his March 3, 2011, affidavit filed in this court corrected his previous statements, though not expressly noting the change in his testimony. The court therefore will exercise its discretion not to award sanctions at this time, but reserves the right to do so in the future if presented with evidence of additional misrepresentations to this court by Mr. Shraim.

## **CONCLUSION**

For all of the above reasons, Mr. Shraim's motion to dismiss for lack of subject matter jurisdiction will be denied; Ms. Al-Mansour's motions for summary judgment, to enjoin the state court proceedings, and for sanctions will also be denied. The court will, however, abstain from

exercising jurisdiction over all of Ms. Al-Mansour's claims pursuant to the *Younger* abstention doctrine.

     A separate order follows.

   __March 21, 2012__                               __/s/__
Date                                                     Catherine C. Blake
                                                          United States District Judge